# CHARLESTON

## WALTERS V. APPALACHIAN POWER CO.

Submitted February 4, 1915.    Decided February 23, 1915.

1. PRESENTATION OF EVIDENCE—*Indemnity Against Loss.*

    In an action against an electric company for personal injury, caused by its alleged negligence in the maintenance and operation of one of its wires, it is prejudicial error to admit evidence, over defendant's objection, to prove that it carried insurance indemnifying it against loss by accident, for the purpose of establishing negligence. (p. 678).

2. NEGLIGENCE—*Evidence—Indemnity—Cause of Injury—Ownership of Agency.*

    Nor is such evidence admissible to prove ownership and control of the particular agency that caused the injury, unless it appears that the contract of indemnity embraces accidents caused by such particular agency. (p. 678).

3. APPEAL AND ERROR—*Presentation for Review—Admission of Evidence—Exception.*

    An exception to the admission of improper evidence, appearing in a general bill of exceptions embodying the evidence and specially pointed out in brief, is sufficient to entitle plaintiff in error to consideration thereof by this court, if it appears that such error was called to the attention of the lower court, by stating it as a ground of a motion for a new trial. An exception thus saved, and pointed out, need not be embodied in a special bill of exceptions. (p. 683).

4. EVIDENCE—*Materiality to Issues—Exclusion.*

 It is proper to reject evidence having no probative value in the' determination of any of the material issues.   (p. 683).

5. NEGLIGENCE—*Contributory    Negligence — Conflicting    Evidence — Questions for Jury.*

 Where the testimony respecting defendant's alleged negligence is conflicting, and the facts and circumstances relied on to establish plaintiff's contributory negligence are such that the minds of reasonable men would not agree thereon, the negligence of both are mixed questions of law and fact for jury determination, and it must determine which is the proximate cause.   (p. 683).

6. DAMAGES—*Variance—Pleading and Proof.*

 Proof that defendant was injured by some other part of his body coming in contact with a charged electric wire, when he had averred that he was injured by its striking his foot, is an immaterial variation.   (p. 684).

7. ELECTRICITY—*Negligence—Charged Telephone Wires—Highways.*

 It is negligence for an electric company owning and operating a highly charged electric wire, to suffer a broken telephone wire, even though not owned by it, to fall across its electric wire upon the highway, and remain there as a menace to the public for an unreasonable time.   (p. 685).

 Error to Circuit Court, Mercer County.

 Action by W. H. Walters against the Appalachian Power Company.   Judgment for plaintiff, and defendant brings error.

Reversed, and new trial awarded.

 *Bernard McClaugherty* and *French & Easley,* for plaintiff in error.

 *Greever & Gillespie* and *Sanders & Crockett,* for defendant in error.

WILLIAMS, JUDGE:

 This action grows out of the same act of alleged negligence by which William Morrison received a personal injury and, on account of which, he sued and recovered a judgment against this defendant, which was recently affirmed by us on writ of error granted to defendant.   Morrison was driving a team along a narrow public road, walking beside his horses. As he was going up a hill he stopped to rest his team, and,

75 W. Va.

seeing the end of a broken telephone wire lying across the
ditch and extending into the roadway, and thinking it might
become entangled in the wheels of his wagon, and supposing
it to be otherwise harmless, he stooped and took hold of it to
toss it out of the road. It proved to be highly charged with
electricity and so overcame him that he was unable to release
himself from it. Plaintiff, who was near by, seeing his
perilous situation, ran to his assistance, and, in his efforts to
get the wire out of Morrison's hand, came in contact with it
himself, and received the alleged injury for which he brought
this action and recovered a judgment, to which defendant was
awarded this writ of error.

The first error assigned is, that the court permitted im-
proper testimony to go to the jury over defendant's objection.
The testimony of witness D. E. French is specially referred
to in brief as improper. Mr. French was counsel for de-
fendant, and was examined as a witness on behalf of plain-
tiff. He was required to state, over objection, by whom he
was employed to defend the case, and replied that he was
employed by The Fidelity and Casualty Company of New
York City. He was then asked what interest that company
had in the suit, and, after his objection to the question was
overruled, replied that he had no direct information, and
only knew from hearsay; and on being further asked the
following question: ''Your information is, or your under-
standing is, rather, that the Appalachian Power Company
ca ries an insurance policy with that Fidelity and Guaranty
company insuring it against loss by accident. Is that true?'',
replied as follows: ''That is my information—yes sir.''
Many similar questions were asked of him, which he was
required to answer over defendant's objections. The ruling
of the court, in each instance, was excepted to, and the ex-
ceptions are noted in the bill of exceptions embodying the
evidence. The testimony was irrelevant and immaterial, and,
as we are unable to see clearly that the jury were not
prejudiced by it, it is cause for reversal. The fact that
defendant carried accident insurance for its protection, could
shed no light on the issue of negligence. It might tend to
show that it had less incentive to be careful than it other-
wise would have had. But the question of motive, in a

negligence case, is not material; the court and jury are con-
cerned only with the question of fact, whether defendant was
negligent, and not with any motive it may have had for not
being sufficiently careful.  Such evidence has frequently been
held by the courts of this country to be improper and to
constitute prejudicial error.  *Virginia-Carolina Chemical Co.*
v. *Knight,* 106 Va. 674, 56 S. E. 725; *Sawyer* v. *Shoe Co.,* 90
Me. 368; *Trembloy* v. *Hernden,* 162 Mass. 383; and *Cosselmon*
v. *Dunfee,* 172 N. Y. 507.  Counsel for plaintiff practically
concede, in their brief, that the evidence is not material on
the main issue of negligence, but they insist that it is proper
evidence tending to prove the 'material fact respecting the
ownership and control of the electric wire that caused the
injury, and, being proper for that purpose, the court did not
err in admitting it generally, no request having been made
to limit its application to any particular purpose, that it was
properly admitted if allowable for any purpose.  Defendant
denied that it owned or controlled the electric wire at the
time and place of injury.  This is one of the contested facts
in the case, and it is conceded that if it did not own and con-
trol the wire, it is not liable.  Hence, counsel for plaintiff
insist that it was proper to show that the action against de-
fendant is being defended by its insurer, as tending to prove
its ownership and control of the wire, that if it did not own
the wire it would not have called upon its insurer to defend
the case.  This, we think, is a *non sequitur*.  If the evidence
had shown that the policy covered accidents growing out of
the negligent use of the particular wire in question, then the
evidence might have been admissible as tending to prove that
defendant owned, operated and controlled it.  But the evi-
dence is, that about a year before the accident, defendant
purchased from the Pocahontas Light & Water Company an
electric light and power plant in the town of Pocahontas and
the system of wires used in connection therewith for carrying
current to its customers for lighting purposes; that the wires
causing the injury extended from the power plant to the
pumping station, a mile and a half out of the town; that this
wire is not especially mentioned in the contract as being either
included in, or excluded from, the sale, but that the general
terms of the contract are sufficiently comprehensive to include

it. The accident policy was not produced, and it does not
appear from the testimony of Mr. French whether its terms
included accidents growing out of the use of the wire in
question. It does not appear what property it included.
Clearly, therefore, his testimony was not evidence tending to
prove ownership. Granting that, in negligence cases, the fact
that defendant carried accident insurance may, under certain
circumstances, be shown, as tending to prove the responsi-
bility of the insured for the proper care and safe management
of the agency causing the injury, still one of the essential pre-
requisites to its admission for that purpose, is that the policy
be proven to apply to the particular agency, the control or
ownership of which the insured denies. This is the dis-
tinguishing feature of the cases, relied on by counsel for
plaintiff as authority for the admissibility of such evidence
to prove ownership and control by the insured. The evidence
in the case at bar does not measure up to the requirement.
Counsel cite the following cases, viz.: *Shoemaker* v. *Bryant
Lumber & Shingle Mill Co.*, 27 Wash. 637, 68 Pac. 380; *Barg*
v. *Bousfield*, 65 Minn. 355, 68 N. W. 45; *Perkins* v. *Rice*, 187
Mass. 28, 72 N. E. 323; and *Akin* v. *Lee*, 206 N. Y. 20, 99
N. E. 85.

The Shoemaker case was a suit by the servant for injury
caused by the alleged negligence of the master. An officer
and stockholder in the defendant company testified on its
behalf, and, for the purpose of showing his interest in the
suit, was asked on cross-examination if he would not have to
pay his proportion of the judgment if one should be recovered
against the company, and, having answered in the affirmative,
he was then asked: "Would your company have to pay it?",
and answered, "Yes, sir." For the purpose of contradicting
him, he was asked this further question: "Is it not a fact
that, if judgment is recovered against this company, some
other company will have to pay this judgment?" That was
legitimate cross-examination only for the purpose of testing
his credibility, and it is expressly said in the opinion, that the
evidence was not material on the main issue. Says the court:
"If he should answer the question in the negative, the evi-
dence of interest, as affecting credibility, would be for the
jury to consider. If he should answer in the affirmative, as

he did in this instance, the inconsistent statements of the witness were proper to go to the jury, as affecting his credibility and the accuracy of his testimony generally." ·

In the Barg case, defendants were manufacturers of woodenware and plaintiff, an infant, was employed to work in the establishment by one Scott, who had charge of a certain department of the business, and was told by him to take, from beneath one of the saws, a tub used to catch the scraps and sawdust falling from it, and in attempting to do as he was commanded plaintiff's hand came in contact with the underside of the rapidly revolving saw, and some of his fingers were cut off, and he sued defendants for the injury. One of the questions in the case was, whether Scott, who employed plaintiff and put him to work in a place of danger, without properly instructing him, was an agent of defendants, so as to make them liable for his negligence, or whether he took the work, by the piece, in the department of which he had charge, in which event he would not be the· agent of defendants, but would be himself liable. Defendants claimed that Scott was an independent contractor and not their agent. The trial court received evidence showing that defendants held an accident policy indemnifying them from liability "by reason of injury to any employee, including this plaintiff or anybody else that might be in any part of the mill working in the factory," and showing that the insurance company was defending the action. The supreme court of Minnesota held the evidence to be admissible, as tending to prove that defendants did not regard Scott as an independent contractor. The relevancy of the evidence in that case is apparent, for it appeared that the accident policy embraced injuries received by any person working in any part of the factory, and necessarily included the plaintiff in that suit, and the jury could very properly infer that the defendants would not have paid for indemnity against damages for which they were not liable. But it does not appear in the case under review that the accident insurance indemnified defendant against damages on account of injury to the plaintiff, or to any other person, occasioned by the particular wire, title to which is in question.·

In· the *Perkins* v. *Rice* case, plaintiff sued on account of an

injury received while endeavoring to use an elevator main-
tained in an apartment building occupied by various tenants.
Defendants admitted ownership of the building, but denied
that they were in control of the elevator at the time of the
accident. It became essential for plaintiff to prove that, not-
withstanding defendants had leased the apartments, they still
retained control of the elevator. On cross-examination of one
of the defendants, counsel for plaintiff, for the purpose of
proving control of the elevator, offered to show that, shortly
before the accident, defendants had procured a policy of
indemnity insurance against loss or damages from accident
arising in operating the elevator, and that such policy was in
force when plaintiff was injured. On objection being made to
the proof thus offered, by counsel for defendants, who stated
that they still denied any control of the elevator, the trial
court excluded the evidence. The supreme judicial court of
Massachusetts held it to be reversible error. The same dis-
tinguishing features exist between that case and the case at
bar, that we pointed out as distinguishing the *Barg* v. *Bous-
field* case. In both of those cases the evidence was held to be
admissible, because it was shown that the insurance contract
indemnified the defendants against damages by accident aris-
ing out of the use of the very thing over which defendant
denied they had any control. The evidence in the present
case falls far short of that. Says the Massachusetts court:
"The probative force of this evidence was for the jury, and
it could properly be argued that the defendants would not
have deemed it prudent to secure indemnity insurance on an
elevator not within their control, or for the careless manage-
ment or defective condition of which they could not be held
responsible."

The *Akin* v. *Lee* case is hardly authority for the proposi-
tion for which counsel contends. That was a case growing out
of the alleged negligence of defendant's chauffeur in operat-
ing an automobile, and a judgment for plaintiff, was re-
versed, because the trial court permitted counsel for plain-
tiff, on cross-examination of defendant, to ask him if he had
not told plaintiff that he was insured against such accidents,
and required him to answer the question, over objection by
his counsel.

But it is insisted that the foregoing assignment is not entitled to consideration, for the reason that it was not embodied in a special bill of exceptions, nor particularly called to the trial court's attention in the motion to set aside the verdict. We have already said that exceptions were noted at the time, and they appear in the transcript of the evidence which is made a part of the record by a general bill of exceptions. The exceptions thus noted are thereby made a part of the record, and our attention is particularly called to them in the brief of counsel for plaintiff in error. The motion for a new trial also states that one of the grounds was the admission of improper evidence, although the objectionable evidence is not therein pointed out; and it is also made one of the assignments in defendant's petition for writ of error. This, under former ruling, is sufficient. The error being particularly called to our attention in the manner indicated, it was not necessary that the objectionable testimony should have been embodied in a special bill of exceptions, or that it should have been specially pointed out as a ground of defendant's motion to set aside the verdict, in order to entitle it to the benefit of the error in this court. *Kay* v. *Glade Creek & Raleigh R. Co.*, 47 W. Va. 467; *Fuller* v. *Margaret Mining Co.*, 64 W. Va. 437; and *Wright* v. *Ridgely*, 67 W. Va. 319. Mr. French's testimony was objectionable on the further ground that it was hearsay and not the best evidence.

Complaint is made that the court erroneously excluded the testimony of George S. Hill. His testimony related to negotiations had between plaintiff and himself, as agent for the defendant company, which resulted in the making of a certain oral agreement for a right of way for an electric line, over plaintiff's land. He said plaintiff afterwards broke the agreement, and in order to avoid the delay incident to condemnation proceedings, and because of a slight alteration he found it necessary to make in the location of the line, he was compelled to pay plaintiff a very much larger sum of money for the right of way than had previously been agreed on. This testimony did not have the slightest bearing on the issues involved, and was very properly excluded.

It is also assigned as error, that the court improperly overruled defendant's motion to set aside the verdict, on the

ground that it was contrary to the law and the evidence, and is not supported by the evidence. Having reached the conclusion to reverse the judgment and award a new trial for the error pointed out, we will not discuss the evidence, further than to say that we think there is sufficient evidence to support the finding of the jury, both on the question of defendant's negligence and the question of its ownership and control of the electric wire causing plaintiff's injury. Although there is no direct evidence proving defendant's ownership and control of the wire, the jury could very reasonably infer that it did, from all the evidence bearing on that question. The written contract of its purchase, from the Pocahontas Light & Water Company, of the power and light plant and lighting system, was introduced as evidence. True it does not mention the particular wire. It was a part of the electric lighting system and, not being specially excepted, it may well be inferred that it was intended to be, and was included under the general terms descriptive of the property purchased.

The allegations in the declaration that plaintiff received the electric shock by reason of the charged telephone wire coming in contact with his foot or ankle, does not render objectionable the evidence tending to prove that he may have been injured by its contact with some other part of his body. That would not constitute a material variance between the allegation and the proof. *Hanley* v. *W. Va. C. & P. Ry. Co.,* 59 W. Va. 419. The material questions are: (1) was he injured by means of the wire, (2) was defendant's negligence the proximate cause thereof, or (3) was plaintiff himself guilty of contributory negligence. All of these were facts for jury determination. Even though plaintiff knew of the danger, it was for the jury to say whether he was negligent in trying to release Morrison from the wire. If they believed, from the evidence and the circumstances of the case, that he did what an ordinarily prudent man would have done in the premises, then it was their duty to find that he was not guilty of negligence. If he subjected himself knowingly to a grave danger, he did so to save human life. It was a humane and heroic act, and he should not lightly be held guilty of negligence in performing it.

If the defendant owned and controlled the electric wire, and permitted the broken telephone wire to fall across it and remain in that condition, on the public highway, for an unreasonable length of time, it was guilty of negligence, even though it did not own the telephone wire. *Morrison* v. *Appalachian Power Co.*, decided at the present term, and cases therein cited.

The giving of plaintiff's instruction No. 1 is assigned as error. It assumes no fact as true, and, we think, fairly submits to the jury the question of defendant's negligence, as well as the question of plaintiff's contributory negligence, both of which, in view of the conflicting evidence were mixed questions of law and fact for their determination.

Another assignment is, that the court improperly refused to give defendant's instructions Nos. 1 and 7. This assignment is not well taken. No. 1 was a peremptory instruction to find for the defendant, and, of course, was properly refused. No. 7 would have told the jury, that if they believed from the evidence the wire in question was not owned by defendant, but was owned and controlled by the Pocahontas Light & Water Company or the Pocahontas Consolidated Collieries Company, on May 1, 1912, the day of the accident, they should find for the defendant. This instruction was properly refused, because the same point was practically covered by instructions Nos. 3, 6 and 9, given at request of defendant. The law concerning defendant's theory of the case was fairly and fully presented to the jury by instructions given upon its request, and there appears to be no error in respect to the giving of instructions for plaintiff, or the refusal to give instructions for defendant.

For the error in permitting the testimony of witness French respecting indemnity insurance carried by defendant, to go to the jury, the judgment will have to be reversed and a new trial awarded.

*Reversed, and new trial awarded.*